### In re LAWSON.
Patent Appeal No. 2274.

Court of Customs and Patent Appeals.
April 14, 1930.

See, also, 39 F.(2d) 669.

Emery, Booth, Varney & Townsend, of Boston, Mass. (Irving U. Townsend, of Boston, Mass., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Appellant filed his application, serial No. 606,319, December 11, 1922, for a patent on an improvement in split fabric and a process for producing the same. As finally amended, the application contained twelve claims, claims 1 to 7, inclusive, and 12, being on the article, and claims 8 to 11, inclusive, being for the process. The examiner allowed the process claims and rejected the others, which decision was affirmed by the Board of Appeals.

The article disclosed and claimed is a seamless tubular stocking, knitted, preferably, on the so-called Banner machine, disclosed in patent No. 933,443, of September 7, 1909, to Joshua D. Hamphill. The leg of the stocking is knitted in the ordinary way by what is commonly known as rotary knitting. A high splice is inserted in the foot of the stocking, shown in appellant's drawings to be in the area just above the heel, this high splice being made of a different yarn than the remainder of the stocking and its lateral suture seams being oblique to the wales, so that, when completed, it is triangular in shape. The suture seams have no loose ends, and the yarn of which the high splice is composed is knitted into and interconnected with the adjoining fabric by means of a reciprocating movement of the needles particularly described in appellant's application.

Claim 3 seems to be illustrative of the rejected claims and is here given:

"3. As a new article of manufacture, a knitted stocking, having a narrowed and widened heel pocket and having a leg portion composed of complete circular courses of loops of the same yarn throughout, and an integral high splice ankle portion constituting a continuation of the leg portion, the front and back part of said high splice ankle portion being composed respectively and exclusively of gradually varying partial courses of loops of distinct yarns, the terminal loops whereof form suture seams extending obliquely across and including all the wales that are narrowing and widening wales of the heel, each partial course of the back part

of the high splice ankle portion terminating at one end in a loop and a partial loop in a single wale, both engaging the same loop in said wale in the next course of the front part of the high splice ankle portion."

██ It will be borne in mind that appellant's process claims have been allowed, and that, if he has invented anything here, it is a stocking with a high splice of the particular shape he describes in his specifications. How he accomplishes this result is not important here. In this respect, there is some confusion, both in the claims and the argument, but it is quite apparent that the appellant is only entitled to the allowance of his rejected claims if the article he has disclosed is novel and discloses invention. The fact that he has shown himself entitled to a patent upon his process does not argue that he is also entitled to a patent upon the article. An article well known in the art may be constructed by a new and patentable process. American Wood Paper Co. v. Fibre Disintegrating Co., 90 U. S. 566, 23 L. Ed. 31; Cohn v. U. S. Corset Co., 93 U. S. 366, 377, 23 L. Ed. 907; In re Decker, 36 App. D. C. 104. It seems to us that appellant here is attempting to secure a product patent, in part, at least, because of the particular process by which his article is produced. This he cannot do. In re Jones, 58 App. D. C. 379, 30 F.(2d) 1003. See, also, In re Nissen (Cust. & Pat. App.) 36 F.(2d) 434.

The Patent Office has rejected the claims in issue on the following references: Ames, 1,252,983, January 8, 1918; Place, 466,372, January 5, 1892.

The Ames reference shows a stocking with a high splice of a different yarn, with the yarns interconnected by the tubular knitting machine in much the same manner as is in issue here. Ames' specifications contain the following language:

"Heretofore it has been customary, when knitting stockings with reinforced soles, to so knit that there will be, inside of the stocking and crossing from side to side, what are commonly known as "floating" strands. These have to be cut out. The result is that in the completed stocking there are cut ends inside. In my improved stocking I employ two main threads which run clear through the stocking, one for the sole and one for the top of the foot, this being known as "double feeding." The seam is so constructed that there are no cut ends, all of the threads or strands being continuous. In other words, my improved stocking has all portions of the yarn or strands knit in, there being no floating strands that have to be cut away.

"The stocking shown in Fig. 1 has two continuous main yarns in its foot portion, said stocking having a high spliced heel and a reinforced sole portion, the reinforce yarn being an additional yarn entirely knit in and cooperating with one of the main yarns, the front of the ankle and the top of the foot being composed only of the same yarn as that which forms the leg portion."

Ames does not show a diagonal suture seam, but his seams are parallel with the wales of the stocking. This feature, however, is fully covered and anticipated by the Place reference. Place thus describes his invention:

"The leg is knitted to line A in Fig. 1 in the customary or any desirable manner. About one-fourth of the needles are then raised or otherwise put out of operation in a body on one side of the cylinder. The cams are then given a reciprocating motion, operating the remaining needles, and at each reciprocation an additional needle next the inoperative needles is thrown out of operation. This is continued until line B is reached and part C completed, at which time about one-half of the needles will be out of operation. The needles originally out of operation are then put in operation and all other needles are raised. A reinforcing-thread is then introduced, the cams are again reciprocated, and an additional needle next the operating needles is thrown in operation at each reciprocation. This is continued until part D is knitted, after which the stocking is completed in any well-known or desirable manner. A stocking so knitted is reinforced in a place peculiarly subject to wear, and the junction-line between the ordinary and the reinforced fabrics extends diagonally, tapering the reinforced part upward with a well-appearing effect in the completed stocking. (See Fig. 2, where the reinforced portion is shown by heavy lines forming a dark surface.)"

His drawing, also, figure 2, plainly discloses suture seams diagonal to the wales and having the same general triangular appearance of appellant's drawing.

Appellant argues that Place is not an anticipation of his idea, because Place simply introduces a reinforcing thread in addition to the other thread, in making his high splice. We are unable to see how the use of a single thread instead of a reinforcing thread is invention, so long as there are no loose thread ends and the suture seams are oblique, which seem to be the salient features of appellant's claims.

We conclude that appellant's application is anticipated by the Ames and Place references, and the decision of the Board of Appeals is therefore affirmed.

Affirmed.