## STANDARD OIL DEVELOPMENT CO. v. MARZALL, Commissioner of Patents.

### No. 10026.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 16, 1949.

Decided Feb. 27, 1950.

Mr. Jerome G. McKean, Houston, Texas, with whom Mr. William F. Weigester, Washington, D. C., was on the brief, for appellant.

Mr. Howard S. Miller, Washington, D. C., with whom Mr. W. W. Cochran, former Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee. Mr. E. L. Reynolds, Solicitor, United States Patent Office, Washington, D. C., also entered appearance for appellee.

Before WILBUR K. MILLER, PROCTOR, and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The Standard Oil Development Company appeals from a judgment of the United States District Court for the District of Columbia which dismissed its complaint, filed under Rev.Stat. § 4915, 35 U.S.C. § 63 (1946), 35 U.S.C.A. § 63, praying for a decree that the Commissioner of Patents allow certain claims for a patent. Appellant is assignee of Theodore A. Huber, the original applicant. Prior to institution of the action in the District Court the claims had been passed upon in the Patent Office by the Primary Examiner and on appeal from his decision by the Board of Appeals, which had affirmed the rejection by the Primary Examiner except as to one claim which it allowed.

Only two claims are pressed upon this appeal. They involve a method and apparatus for completing an oil and gas well. Given a drilled well, with casing cemented in place, with heavy fluid replaced in the well by fluid light enough to permit a lower hydrostatic head than the pressure of the formation around the well, and with a string of tubing hanging in the bore hole, there is lowered into the end of the bore hole "a screen provided with a plurality of laterally disposed gun barrels arranged to discharge bullets through said casing into the producing formation." The gun barrels are mounted in the screen. Each gun has a firing chamber and is adapted to discharge a bullet from its outer end laterally from the screen. A firing device is lowered into the tubing, to discharge the guns and then to be withdrawn. The inner end of each gun barrel is sealed off so that when the gun is fired there is left no opening for cement and debris to enter the screen. The purpose of the device is to bring a drilled well into production.

The prior art includes a patent to one Church (No. 2157729) containing numerous similar features for bringing a well into production, with gun barrels situated some five feet below perforations in the tubing, and a firing device. In this apparatus the oil issues in through the holes made by the bullets, then rises to the area of the perforations, going in through them to the interior of the tubing for journey to the surface. There is also a prior patent to one Howard (No. 2211206) which includes a screen. Further, Ricou's earlier patent (No. 2226073) is equivalent to Church's in that it has a perforated nipple with gun barrels below. The Church and Ricou devices do not include screens and appear not to be adapted to use in formations of an unconsolidated character, such as soft sand, whereas appellant's device is adapted to such use. The appellant combined (1) the gun firing technique of penetrating the casing and formation around the well with (2) a screen adjacent to the hole thus made, so that the two function together and the oil flows directly into the tubing

while at the same time loose sand and debris are kept out by the screen.

Demonstrations of the devices of appellant and of Church were made in the District Court with the use of models. It was shown that appellant's produced fluid at the rate of three gallons per minute whereas the Church device did so at the rate of only one-fifteenth gallon per minute. The difference was due to the fact that in the appellant's device the fluid had easy access to the inside of the screen but in the Church tool the fluid had a very restrictive access into the interior of the well because of its sanded-up condition. The Patent office did not have the benefit of the demonstrations made in court or of testimony relating thereto.

The District Court found: "At the trial a demonstration of the comparative operability of completion methods and equipment methods according to Church and to plaintiff, respectively, show that the latter were immeasurably superior to the former." But the court also found that there was no invention in mounting the gun barrel, which had itself appeared in both the Church and Ricou patents, in the screen rather than near the screen, and that none of the appellant's claims defined invention. The complaint was dismissed.

In urging error appellant contends that patentability may be shown though the invention rests, as do its claims, upon a combination of elements already known. The cases cited by appellant, Loom Co. v. Higgins, 1881, 105 U.S. 580, 26 L.Ed. 1177; Expanded Metal Co. v. Bradford, 1909, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034; Potts v. Creager, 1895, 115 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Hobbs v. Beach, 1900, 180 U.S. 383, 21 S.Ct. 409, 45 L. Ed. 586; Philadelphia & Reading Coal & Iron Co. v. Delaware L. & W. C. Co., 3 Cir., 1937, 88 F.2d 391, support this position. Appellant also relies upon decisions of this court, including Electrons, Inc., et al. v. Coe, 1938, 69 App.D.C. 181, 189, 99 F.2d 414, 422 where we said, "* * * The fact that all the elements entering into a combination are old does not necessarily negative the existence of invention. Dia-

mond Rubber Co. v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; * * *. Such a combination may be patentable invention if it produces a new result, or an old result in a new or more efficient way. * * * The fact that a combination later appears to be a simple one does not necessarily negative the presence of a high degree of inventive genius, Webster Loom Co. v. Higgins, 1881, 105 U.S. 580, 26 L.Ed. 1177; * * * On the other hand, if a combination is the result of mere mechanical skill applied to an idea or ideas previously disclosed, it is not invention. Paramount Publix Corp. v. American Tri-Ergon Corp., 1935, 294 U.S. 464, 55 S.Ct. 449, 79 L. Ed. 997; * * *."

▮ From these cases it seems clear that disclosure by the prior art of both the screen and gun techniques does not necessarily prevent patentability from arising by reason of the fact that appellant's device is a combination of the two. It would seem clear too that the obtaining of better results through such a combination does not necessarily make a case for patentability. There is still a further element which must appear, namely, that this combination, though admittedly followed by substantially better results, grew out of that "uncommon talent" which lies at the root of invention in a patentable sense. In re Marshutz, 1898, 13 App.D.C. 228, 230; Reed et al. v. Coe, 1942, 76 U.S.App.D.C. 369, 132 F.2d 599; Besser v. Ooms, 1946, 81 U.S.App.D.C. 7, 154 F.2d 17; Minnesota Mining & Mfg. Co. v. Coe, 1940, 73 App. D.C. 146, 118 F.2d 593. " * * * the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain." Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 39, 41, 86 L.Ed. 58.

Certainly the appellant made a contribution. It took the Church idea of boring into the oil and gas formation by a bullet discharged laterally near the bottom of the well. To keep out sand which otherwise would come into the well it fitted a screen to this immediate area. A screen had been devised by Howard; and the general idea of some sort of combination had been used by Church and Ricou. They combined the gun and firing device, not with a screen, but with perforations, and these were some feet above the guns. The oil would mount to these perforations before passing through them into the interior tubing and on to the surface. Appellant brought the idea of combination to a greater utility not only by making it one of gun barrels and screens but also by making the combination operate in such proximity to the area in the producing formation into which the guns were fired that the oil could flow more directly into the well. There is also the advantage of a screen as compared with perforations spaced more widely.

▮ Notwithstanding this improvement, appellant's method and apparatus do not so clearly emanate from the sort of "uncommon talent" or "creative genius" that inspires invention as to lead us to overthrow the decision of the District Court. In so deciding we do not give to the decision of the Patent Office the weight to which it would be entitled if its rejection of the claims had been made on the same facts as were before the District Court. See Nichols v. Minnesota Mining & Mfg. Co., 4 Cir., 1940, 109 F.2d 162. There was substantial additional evidence before the District Court in the form of demonstrations and evidence relating thereto. We cannot in reason say with certainty that the Patent Office would have decided as it did had this additional evidence been before it. The trial in the District Court was *de novo,* as contemplated by Rev.Stat. § 4915, 35 U.S.C. § 63 (1946), 35 U.S.C.A. § 63. While ordinarily the record in the court will no doubt be quite similar to that in the Patent Office proceedings, see Globe-Union, Inc., v. Chicago Telephone Supply Co., 7 Cir., 1939, 103 F.2d 722, 727, it need not be the same, and it was not in this case. But the scope of our review of the decision of the District Court itself is not an unlimited one. The scope and character of review depend upon the nature of the question reviewed. The problem in the present case, if it can any longer be con-

sidered a problem in this court, is whether the District Court's finding of nonpatentability in a § 4915 action is a finding of fact. If so we may set it aside only if it is clearly erroneous. In Besser v. Ooms, supra, this court said [81 U.S.App. D.C. 7, 154 F.2d 18]: "* * * invention is a question of fact," from which it followed that, "A reasonable finding that claims lack invention should not be set aside." Prior thereto, in Abbott et al. v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449, 451, we had discussed in some detail the principles which should guide the reviewing court in passing upon rulings of the Patent Office and of the trial court in a case brought under Rev.Stat. § 4915, 35 U.S.C. § 63 (1946), 35 U.S.C.A. § 63. It was pointed out that the question of invention is one in which the decision of the administrative expert, the Patent Office, is entitled to great weight. Further, the same opinion points out, " 'Under the rule settled in this jurisdiction, while we are not absolutely bound by a chancellor's findings of fact, we do not disturb them on appeal unless upon an examination of the evidence they are clearly wrong.' Hazen v. Hawley, 66 App.D.C. 266, 271, 86 F.2d 217, 222, certiorari denied 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452." We there also said that Carbide & Carbon Chemical Corp. v. Coe, 1938, 69 App.D.C. 372, 102 F.2d 236, is not to the contrary, but illustrates the circumstances under which this court might overturn both Patent Office and trial court. The "clearly erroneous" rule is solidified in Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., where a finding of fact by the trial court is the subject of review.

The nature of a finding of non-patentability because of the absence of invention places it in a special though not unique category within the general category of fact finding. This is illustrated by the present case. The facts regarding the prior art and the claims, with the consequences of the improvement made by the applicant, are not in dispute. The dispute is over what opinion on patentability should be reached from the "facts". In such circumstances it is held by some courts that the question is in part one of law. Hanovia Chemical & Mfg. Co. v. David Buttrick Co., 1 Cir., 1942, 127 F.2d 888, opinion of Judge Woodbury, but see the reservations of Judges Magruder and Mahoney. Bellavance v. Frank Morrow Co., 1 Cir., 1944, 141 F.2d 378, refers to the confusion in the law on this subject.[1] In National Slug Rejectors v. A. B. T. Mfg. Corp., 7 Cir., 1947, 164 F.2d 333, 336, certiorari denied 1947, 333 U.S. 832, 68 S.Ct. 459, 92 L.Ed. 1116, it is said, "This century-old question is always perplexing. We can not avoid or evade it. We must meet it. Patentable invention is a question of law. Loney Co. v. Ravenscroft, 7 Cir., 162 F.2d 703." The Loney Co. case had been decided by the same court in 1947. See, also, Justice Black's dissent in Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 1943, 321 U.S. 275, 279–280, 64 S.Ct. 593, 88 L.Ed. 721, with which Justices Douglas and Murphy concur, particularly the footnote citing Mahn v. Harwood, 1884, 112 U.S. 354, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665. Appellate courts generally, however, follow the "clearly erroneous" standard of review of a decision denying patentability for lack of invention, predicated upon the issue being one of fact. See United States v. Esnault-Pelterie, 1936, 299 U.S. 201, 57 S.Ct. 159, 81 L.Ed. 123; Thomson Spot Welder Co. v. Ford Motor Co., 1923, 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098, an infringement suit. In addition to the Abbott and Besser cases, supra, the following decisions of this court are broadly to this effect: Minnesota Mining & Mfg. Co. v. Coe, supra; Standard Cap & Seal Corp. v. Coe, 1941, 75 U.S.App.D.C. 60, 124 F.2d 278, 282; Krause v. Coe, 1941, 74 App.D.C. 47, 120 F.2d 717; Sharp v. Coe, 1941, 75 U.S.App.D.C. 118, 125 F.2d 185; Magnaflux Corp. v. Coe, 1943, 78 U.S.App.D.C. 258, 139 F.2d 531; General Motors Corp. v. Coe, 1941, 74 App.D.C. 189, 120 F.2d 736. These decisions have not been altogether without differences of opinion based fundamentally on the scope of review.

---

1. The question is discussed at length in 43 Ill.L.Rev. 535 et seq. 1948.

Minnesota Mining & Mfg. Co. v. Coe, supra. See, also, Nichols v. Minnesota Mining & Mfg. Co., supra; Strong-Scott Mfg. Co. v. Weller, 8 Cir., 1940, 112 F. 2d 389, and Kurtz v. Belle Hat Lining Co., 2 Cir., 1922, 280 F. 277, at page 280, in which latter case it is said: "The problem is the more difficult because evidence as to invention does not often give rise to conflicts of fact in the ordinary sense of that phrase; it does, however, give rise to acute differences of opinion as to the inferences to be drawn from facts in themselves uncontradicted; * * *."

■■ It cannot well be denied that, given the facts in the present case regarding the prior art and the data as to the new claims advanced, as well as other relevant facts, the question of patentability decided by the trial court "must be resolved by a subjective opinion as to what seems an easy step and what does not." Kirsch Mfg. Co. v. Gould Mersereau Co., 2 Cir., 1925, 6 F.2d 793, 794, opinion by Judge Learned Hand. This subjective opinion or formulation of a judgment is not the finding of a fact in the usual sense envisaged by Rule 52, Fed.R.Civ.P. All facts are not of the same general character. A court need not ignore entirely the difference between an objective fact and a subjective opinion though each is termed a factual matter. Where the decision involves such a subjective opinion a somewhat wider latitude properly may be exercised by a reviewing court. This larger freedom must yet remain within the bounds established by the rule that the findings of fact of the trial court are not to be set aside unless clearly erroneous. This rule applies though a particular situation such as is now before us involves ultimately a judgment or opinion from known facts and therefore permits greater freedom in determining whether the resolution of the question by the trial court was clearly erroneous. Allowing ourselves the permissible latitude, we cannot say that in the present case the finding of the trial court against patentability is not a reasonable one on the evidence or that it is clearly erroneous. The evidence does not make clear that the combination and improvement admittedly brought about are the product of creative talent which lifts the claims to the level of patentability over and above a prior art which had already disclosed the essentials of the new device.

Affirmed.